UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ROBERT R. WEBSTER, JR.,

                              Plaintiff,

    v.                                                 6:21-CV-1141 (DNH/ATB)

RICHARD STEWART, Mayor
Sylvan Beach, et al.,

                              Defendants.

ROBERT R. WEBSTER, JR., Plaintiff, pro se

ANDREW T. BAXTER
United States Magistrate Judge

**ORDER and REPORT-RECOMMENDATION**

The Clerk has sent to the court for review a complaint brought pursuant to 42 U.S.C. § 1983, filed by pro se plaintiff Robert R. Webster, Jr., together with a motion to proceed in forma pauperis ("IFP") (Complaint ("Compl.") (Dkt. Nos. 1, 2). For the following reasons, this court will grant plaintiff's IFP application for purposes of filing, but will recommend dismissal of this action pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(ii).

**I.    In Forma Pauperis ("IFP") Application**

A review of plaintiff's IFP application shows that he declares he is unable to pay the filing fee. (Dkt. No. 2). The court finds for purposes of this recommendation, that plaintiff meets the financial criteria for IFP status.

In addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss

the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i) -(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555).

In addition, Rule 8(a) of the Federal Rules of Civil Procedure requires the

complaint to include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Whitfield v. Lopez*, No. 15-CV-4827, 2015 WL 6128866, at *3 (E.D.N.Y. Oct. 16, 2015) (citing inter alia Fed. R. Civ. P. 8(a)(2)).  The purpose of Rule 8 is to give fair notice of the claim being asserted so as to permit the adverse part the opportunity to file an answer and prepare a defense. *Hudson v. Artuz*, No. 98 Civ. 4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995)).  The court will now turn to a consideration of the plaintiff's complaint under the above standards.

## II. Complaint

Plaintiff has submitted his complaint on a form created for civil rights actions, brought pursuant to 42 U.S.C. § 1983.  Attached to plaintiff's form-complaint are nine exhibits. (Dkt. Nos. 1-1-1-9).  Most of these exhibits are letters, some of which appear to be related to, and "clarify," the statement of facts contained in plaintiff's form-complaint.  The form complaint contains only two paragraphs of "Facts." First, plaintiff states that defendant Stewart, as Chief of the Sylvan Beach Fire Department and Mayor of Sylvan Beach "called off rescue on a 911 gang attack on 3/17/2012." (Compl. ¶ 4 - Facts).  Second, plaintiff states that the "Sherrif [sic]" and "officers of the dept." are "withholding evidence of my reports and body cam's [sic]."  Plaintiff states that he was "starved," and his sprained ankle was "not attended to." (*Id.*)  The last sentence states "Neglect of duty." (*Id.*)  The second paragraph appears to claim that officials are withholding "evidence" of the defendant's alleged conduct.

From what the court can decipher based on the letters attached to the complaint,

3

most of which appear to be written in 2021, something happened to plaintiff, which he refers to as a "gang attack," in March of 2012. He claims that defendant Stewart "called off" the 911 rescue, and plaintiff was not assisted with his sprained ankle as a result. The "starvation" part of plaintiff's claim is unclear. Plaintiff's first exhibit is written to an illegible recipient and states that plaintiff does not believe that the Oneida County Sheriff's Department is "totally" corrupt. (Pl.'s Ex. 1) (Dkt. No. 1-1). The rest of the 16-page letter becomes increasingly incomprehensible. One of plaintiff's letters implies that he may have injured another individual during the 2012 incident. (Pl.'s Ex. 3) (Dkt. No. 1-3). Exhibit 3 is entitled "When the Fire Ch[ie]f and the State Troopers made me a killer. St. Patrick's Day 2012." (Dkt. No. 1-3). In this letter, plaintiff implies that the other individual would not have been hurt if the defendants had allowed the 911 "rescue" to go forward.[1] (*Id.*)

Other letters appear to be unrelated to the 2012 incident. One letter is written to the Sheriff's Department, in 2021, requesting that there be "no more [unnecessary] welfare visits" because plaintiff was not going to hurt himself or anyone else. (Pl.'s Ex. 4). His letters also to indicate that, in July of 2021, he attempted to obtain documents and/or evidence relating to the 2012 incident and more recent "evidence," but these items are being "withheld" from him. Although there is no "Request for Relief" in the complaint itself, the Civil Cover Sheet contains a request for ten million dollars. (Dkt. No. 1-10).

---

[1] In one of his letters, plaintiff states that there were two fights on March 17, 2012 - March 18, 2012, and that the second fight would not have occurred if 911 had dispatched officers when first called. (Pl.'s Ex. 9 at 3-4).

**III.    Oneida County Sheriff's Department**

Plaintiff names the Oneida County Sheriff's Department as a defendant in this action.  It is well-settled that an administrative arm of a municipality, such as the Oneida County Sheriff's Department "cannot sue or be sued because it does not exist separate and apart from the municipality and does not have its own legal identity." *Leland v. Moran*, 100 F. Supp. 2d 140, 145 (N.D.N.Y. 2000) (internal quotation omitted). *See also Clayton v. City of Kingston*, 44 F. Supp. 2d 177, 183 (N.D.N.Y.1999).  Thus, plaintiff could not state a claim under section 1983 against the "Oneida County Sheriff's Department" under any reading of the complaint, nor could he amend his complaint against the Department, and the complaint may be dismissed with prejudice as against this defendant.

To the extent that the court could interpret plaintiff's complaint as one against the municipality of Oneida County, the complaint still fails to state a claim.  A municipality may only be named as a defendant in certain circumstances.  In *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), the Supreme Court outlined the limited circumstances under which a municipality may be liable under Section 1983.  A municipality may not be held liable solely because it employs a tortfeasor. *LaVertu v. Town of Huntington*, No. 13-CV-4378, 2014 WL 2475566, at *3 (E.D.N.Y. Apr. 4, 2014) (citing inter alia *Los Angeles County, Cal. v. Humphries*, 562 U.S. 29, 35 (2010)), report-recommendation adopted in relevant part, 2014 WL 2506217 (E.D.N.Y. June 2, 2014).

"A section 1983 claim against a municipality generally requires that 'action

pursuant to official municipal policy caused the alleged constitutional injury.'" *Feaster v. City of New York*, No. 20-1122, 2021 WL 4597766, at *1 (2d Cir. Oct. 7, 2021) (quoting *Hu v. City of N.Y.*, 927 F.3d 81, 104 (2d Cir. 2019) (internal quotations omitted) and citing *Monell*, 436 U.S. at 691; *Connick v. Thompson*, 563 U.S. 51, 61 (2011) ("Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law.")) "'[I]solated acts . . . by non-policymaking municipal employees are generally not sufficient to demonstrate a municipal custom, policy, or usage that would justify municipal liability.'" *Id.* (quoting *Jones v. Town of E. Haven*, 691 F.3d 72, 81 (2d Cir. 2012) (alteration in original)).  Municipal liability may, under certain circumstances, be based upon a failure to properly train the municipality's employees. *See City of Canton v. Harris*, 489 U.S. 378, 387-90 (1989). However, the failure to train or supervise must amount to deliberate indifference by the municipality. *Walker v. City of New York*, 974 F.2d 293, 297 (2d Cir. 1992).

In this case, plaintiff complains about incidents that relate only to him.[2]  Thus, to

---

[2] One of the letters attached as exhibits to the complaint contains some vague statements about having "proof" that officials questioned the truth of plaintiff's statements, resulting in "many suspicious 911 calls deleted" or "hidden by 911 with Sheriff's involvement." (Pl.'s Ex. 1 at 1). Plaintiff states that he has "audio of all calls." (*Id.*)  It appears that plaintiff is still referring to calls that he made, and that these calls may have been ignored because officials questioned the veracity of plaintiff's assertions.  Plaintiff seems to be trying to establish a reason that the 911 call of March 2012 was allegedly "called off," not that there was a policy or custom of ignoring 911 calls.  Plaintiff seems to be referring to the present and outlining his efforts to obtain "evidence."  He states that has "evidence of a second fight" in March of 2021, and he contacted officials at Fort Drum.  He also intended to contact the Washington Post, the FBI, the U.S. Marshal, and a lawyer. (*Id.* at 1-3).  He talks about dropping off his "rebuttal," but it is unclear what he was rebutting.  Plaintiff then digresses into a discussion of how an officer came to his house in July 2021 and apparently entered plaintiff's porch without ringing the doorbell, among other statements relative to his search for evidence and the officials' reaction. (*Id.*)

the extent the court can even interpret plaintiff's random assertions, he makes no assertion of municipal liability. In any event, as discussed below, plaintiff's claim fails on various other bases.

## IV. Statute of Limitations

### A. Legal Standard

Federal courts borrow the state law personal injury statute of limitations for purposes of filing section 1983 actions. *Wilson v. Garcia*, 471 U.S. 261, 276 (1985). In New York State, the relevant limitations period is three years. *Owens v. Okure*, 488 U.S. 235, 250-51 (1989). *See* N.Y. Civ. Prac. L & R. § 214(5). Thus, unless the limitations period is tolled for some reason, a plaintiff must file his section 1983 civil rights action within three years of the accrual of each cause of action.

Federal law governs the question of when a section 1983 claim accrues. *Covington v. City of New York*, 171 F.3d 117, 121 (2d. Cir. 1999) (citing *Morse v. University of Vermont*, 973 F.2d 122, 125 (2d. Cir. 1992)). Generally, under federal law, a cause of action accrues when "the plaintiff knows or has reason to know of the injury which is the basis of his action." *Id.* (quoting *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980) (internal quotation marks omitted)). Although federal law determines when a section 1983 claim accrues, state tolling rules determine whether the limitations period has been tolled. *Abbas v. Dixon*, 480 F.3d 636, 641 (2d Cir. 1997). New York has codified the circumstances under which limitations may be tolled. *See e.g., Jewell v. Cty. of Nassau*, 917 F.2d 738, 740 (2d Cir. 1990) (citing N.Y. Civil Practice Law & Rules § 204(a) (court/arbitration stay), § 207 (defendant's absence from

7

state or residence under a false name), and § 208 (infancy/insanity)).

**B.    Analysis**

Plaintiff alleges that defendant Stewart "called off" a "rescue" after a 911 call, reporting a "gang attack" on March 17, 2012. (Compl. ¶ 4). The court assumes based on the attached exhibits that the "gang attack" was directed at the plaintiff. Plaintiff asserts "neglect of duty," states he was "starved," and his sprained ankle was "not attended to." (*Id.*) Plaintiff would have been aware of his injury, and any cause of action against the defendant would have accrued, when he allegedly "called off" the 911 response on March 17, 2012, more than nine years ago. Thus, absent any basis for tolling, the statute of limitations expired on March 17, 2015.

Plaintiff has not stated any statutory basis for tolling the statute of limitations.[3] Plaintiff's Exhibit 9 is a letter, addressed to the "Sheriff." (Pl.'s Ex. 9) (Dkt. No. 1-9). In this letter, plaintiff acknowledges that the addressee was not the Sheriff in 2012, and he states that wishes to "get something done" after 10 years. (Pl.'s Ex. 9 at 1). He also states that defendant Stewart was responsible for the incident and that his actions were "criminal." (*Id.* at 3). Plaintiff states that he "believes the statute of limitations should be lifted in "all cases" as this all was reported and known to all police officers of

---

[3] While there is some reference to plaintiff's mental state in the documents, and his references to conspiracies make his present mental state unclear, it is not alleged, nor is it apparent, that plaintiff would not been aware of any cause of action for such an extended period of time. The New York State tolling provision for insanity refers to insanity at the time the cause of action accrued. *See Gardner v. Wansart*, No. 05-CV-3351, 2006 WL 2742043, at *5 n.4 (S.D.N.Y. Sept. 25, 2006) (although mental illness is on its own insufficient for equitable tolling purposes, tolling is appropriate if a plaintiff is insane at the time the cause of action accrues and is "unable to protect [his] legal rights because of an overall inability to function in society").

8

N.Y.S."[4] (*Id.*)  Plaintiff clearly understands the concept of the statute of limitations, and he was aware of his cause of action.  There is no indication that plaintiff has any exceptional reason that the court should equitably toll the statute of limitations in this case.

Because the failure to file an action within the limitations period is an affirmative defense, a plaintiff is generally not required to plead that the case is timely filed. *See Abbas*, 480 F.3d at 640.  Dismissal may be appropriate where the existence of the limitations defense is plain from the face of the pleading. *See Walters v. Indus. and Commercial Bank of China, Ltd.*, 651 F.3d 280, 293 (2d Cir. 2011) (the court may dismiss an action sua sponte on limitations grounds where the facts supporting the defense are set forth in the plaintiff's papers) (internal quotation marks and citation omitted).  Before dismissal, the court would normally give the plaintiff an opportunity to argue that there is a basis upon which to toll the statute. *See Abbas*, 480 F.3d at 640.  However, in this case, even if the court were to assume that the statute of limitations should be tolled for any reason, plaintiff's complaint still fails to state a claim.

V.      **Failure to Respond Claim**

   A.     **Legal Standards**

The government does not have a general duty under the Constitution to protect an individual from harm. *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195-96 (1989).  The Second Circuit has recognized two exceptions to this general

---

[4] Plaintiff may be referring to the statute of limitations for criminal actions because he asserts that defendant Stewart should be "arrested." (Pl.'s Ex. 9 at 3-4).  Regardless of the statute to which he refers, he is clearly aware of the concept of a statute of limitations.

9

principle. *Matican v. City of New York*, 524 F.3d 151, 155 (2d Cir. 2008).  First, the state or its agents may owe a constitutional obligation to the victim of private violence if the state had a "special relationship" with the victim. *See Ying Jing Gan v. City of New York*, 996 F.2d 522, 533 (2d Cir.1993) (citing *DeShaney*, 489 U.S. at 198). Second, the state may owe an obligation to plaintiff if its agents "in some way had assisted in creating or increasing the danger to the victim." *Dwares v. City of New York*, 985 F.2d 94, 98-99 (2d Cir.1993) (citing *DeShaney*, 489 U.S. at 201, 203), *overruled on other grounds by Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993)).

In addition, even if the plaintiff can establish the existence of one of the two exceptions, he must also show that the defendant's behavior was "'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Matican*, 524 F.3d at 155 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 848 n. 8 (1998).  "This requirement screens out all but the most significant constitutional violations, 'lest the Constitution be demoted to . . . a font of tort law.'" *Id.*

**B.  Analysis**

To the extent that the court can decipher anything from the papers submitted by plaintiff, he seems to allege that defendant "called off" a 911 call when plaintiff was being attacked, and he suffered a sprained ankle, and maybe some other injury, as a result.[5]  One of plaintiff's exhibit letters is written to officials at Fort Drum and

---

[5] Although plaintiff also alleges that he was "starved," since the 911 call was "called off," it is unclear who "starved plaintiff.  Plaintiff's Exhibit 7 states that plaintiff also suffered a concussion and a cut thumb, but that he went to a friend's after the fight.  Two deputy Sheriffs later arrived and apologized for "standing-down." (Pl.'s Ex. 7 at 2).

10

discusses the events of March 17, 2012. (Pl.'s Ex. 7). Without discussing the extraneous facts contained in plaintiff's letter, it appears that plaintiff called 911, but did not wish the State Police to "respond." (*Id.*) Plaintiff claims that when the "State Police" called the Lieutenant at the "Sheriff's Department," he was told to "stand down," and "they" would handle it, but they never arrived.[6] (*Id.*) Plaintiff then describes a fight he had with twenty-four soldiers. (*Id.*) Based on these facts, plaintiff has failed to established either of the exceptions to the general rule that government officials do not have a general duty to protect an individual from harm. Thus, plaintiff does not state a constitutional claim against defendant Stewart.[7]

Plaintiff also alleges "neglect" of duty. (Compl. ¶ 4). If plaintiff is asserting a claim for negligence, such a claim is not actionable under section 1983. *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986).

## VI.    **"Withholding Evidence"**

It is difficult to determine what plaintiff means when he states that the "Sheriff and Officers are withholding evidence of my reports and body cam's [sic]." (Compl. ¶ 4). The "Sheriff" is not named as a defendant in this action, and plaintiff does not name any particular officer who may have withheld "evidence." Plaintiff also does not

---

[6] From Exhibits 3 and 7, it appears that the State Police were responsible for telling the Sheriff to stand down and for any failure to appear. The letter filed as Plaintiff's Exhibit 9 blames defendant Stewart, apparently for obeying the State Police order. Under either scenario, plaintiff does not state a claim.

[7] In order to establish a constitutional violation, the plaintiff must also show that a defendant was "personally involved" in the violation that he asserts. *Tangreti v. Bachmann*, 983 F.3d 609, 615-19 (2d Cir. 2020). The court need not determine whether defendant Stewart would have been personally involved if he obeyed an order from the State Police to "stand down."

11

specify what "evidence" was withheld except a conclusory reference to "reports" and "body cams." Plaintiff does allege that this attempt to obtain evidence occurred in 2021, thus, there is no statute of limitations bar.

Plaintiff's letters appear to state that he has been seeking documents or reports from the 2012 incident and has been unable to obtain them. *See e.g.* Dkt. No. 1-1). He may also be looking for "evidence" of his more recent interactions with law enforcement officers. To the extent that plaintiff could attempt to assert some Freedom of Information Law ("FOIL") claim for any information, it would have to be dismissed because this court has no subject matter jurisdiction over a New York State Law FOIL claim. *Hayes v. Doe I*, No. 17-CV-6507 (CM), 2017 WL 11526093, at *1-2 (S.D.N.Y. Oct. 25, 2017). An individual "must pursue these claims administratively or by an Article 78 proceeding in New York State Supreme Court." *Id.* at *2 (citing N.Y. Pub. Off. Law § 89(4)(b); *Posr v. City of New York*, No. 10-CV-2551 (RPP), 2013 WL 2419142, at *14 (S.D.N.Y. June 4, 2013) ("Under New York state law, if an agency or government official fails to comply with the provisions of FOIL, the person submitting the FOIL request must pursue an administrative appeal or seek remedies in state court pursuant to N.Y. C.P.L.R. Article 78."), *aff'd sub nom.*, *Posr v. Ueberbacher*, 569 F. App'x 32 (2d Cir. 2014) (summary order)). Thus, to the extent that plaintiff's statements could in any way be interpreted to allege a FOIL claim, the claim must be dismissed for lack of subject matter jurisdiction.

## VII.   **Rule 8**

This court has struggled to determine what possible claims plaintiff may be

attempting to assert. *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (pro se papers are interpreted liberally to raise the strongest arguments suggested therein). While plaintiff's form-complaint is "short," it is lacking in any detail which would establish a claim against the defendant. Plaintiff's exhibits consist mostly of letters written to random recipients, which include some relevant facts, but are filled with seemingly unrelated rants about telephones, computer hacking, sex trafficking, and plaintiff's credit card accounts.[8] The complaint fails to comply with Rule 8 requirements and may be dismissed on that basis as well.

## VIII. Opportunity to Amend

### A. Legal Standards

Generally, when the court dismisses a pro se complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once, however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with plaintiff's causes of action is substantive such that better pleading will not cure it. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

### B. Analysis

The court finds that plaintiff would be unable to amend to state a claim against either defendant. Even if the court were to toll the statute of limitations for some period of time, plaintiff may not state a claim based upon the Sheriff's "calling off" the 911

---

[8] These things all may be related to plaintiff's belief that there is a conspiracy (or many conspiracies) against him and that his computer, telephone, and credit card account have all been hacked.

response. To the extent that plaintiff is seeking documents, videos or "evidence" under New York Law, this court has no jurisdiction over his request. Thus, the court will recommend that plaintiff be denied the opportunity to amend his complaint.

**WHEREFORE**, based on the findings above it is

**ORDERED**, that plaintiff's motion to proceed IFP (Dkt. No. 2) be **GRANTED FOR PURPOSES OF FILING ONLY**, and it is

**RECOMMENDED**, that plaintiff's 911 call claims be dismissed **WITH PREJUDICE** as frivolous and for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(B)(ii), and it is

**RECOMMENDED**, that to the extent that plaintiff is alleging claims which may be interpreted as being brought under the New York State Freedom of Information Law, the complaint be **DISMISSED WITHOUT PREJUDICE BUT WITHOUT THE OPPORTUNITY TO AMEND** for lack of subject matter jurisdiction, and it is

**ORDERED**, that the Clerk serve a copy of this Order and Report-Recommendation on plaintiff by regular mail.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: October 25, 2021

Hon. Andrew T. Baxter
U.S. Magistrate Judge